**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF MISSISSIPPI**
**SOUTHERN DIVISION**

SECURITIES AND EXCHANGE COMMISSION,

Plaintiff,

v.

THOMAS J. MOORE, III,

Defendant.
_______________________________________/

**Case No. 1:26cv286 LG-BWR**

**COMPLAINT FOR INJUNCTIVE AND OTHER RELIEF AND DEMAND FOR JURY TRIAL**

Plaintiff Securities and Exchange Commission (the "Commission") alleges as follows:

## I. INTRODUCTION

1. The Commission brings this action against Defendant Thomas J. Moore, III ("Defendant" or "Moore") to enjoin him from committing further violations of federal securities laws arising from his perpetration of a fraudulent securities offering. While soliciting investors, Defendant made a series of material misstatements and omissions, and misappropriated nearly $1.94 million in investor money for his personal use.

2. Between approximately December 2021 and August 2024 (the "Relevant Period"), Defendant raised at least $4.94 million from approximately 20 retail investors by offering them equity interests in Mississippi Green Oil, LLC ("Mississippi Green"), a medical marijuana company that he founded. Defendant promoted Mississippi Green as a developing enterprise poised to generate significant revenue and assured investors that their

money would be used solely for the purpose of growing, cultivating, and selling medical marijuana plants to dispensaries in Mississippi.

3. Defendant's pitch was compelling—but false. While soliciting investors, Defendant lied about how he would use their money only on the marijuana business and diverted nearly $1.94 million—approximately 40% of investor money—for his personal benefit. Defendant spent heavily on travel, jewelry, clothing, private school tuition, restaurants, and made large cash withdrawals. He never disclosed this diversion of money to investors.

4. Defendant also attracted and retained investors by promising short-term distributions that he said would begin as soon as thirty days and no later than nine months after they invested in Mississippi Green. He told investors that he and his company would make these distributions on a quarterly schedule. However, Mississippi Green did not generate sufficient revenue and struggled with licensing, equipment, and cultivation delays. Despite these setbacks, Defendant continued assuring investors that distributions were imminent, even as none were ever made.

5. Compounding the deception, Defendant failed to disclose that other investors had already sued him for failing to pay them as promised. By the time Defendant solicited many later investors, at least one lawsuit had been pending for several months. Defendant nonetheless continued raising money and, on at least one occasion, falsely told an investor that he had not been served with any lawsuit.

6. By engaging in the conduct alleged in this Complaint, Defendant violated and unless enjoined, is reasonably likely to continue violating, Section 17(a) of the

Securities Act of 1933 ("Securities Act") [15 U.S.C. § 77q(a)] and Section 10(b) of the Securities Exchange Act of 1934 ("Exchange Act") [15 U.S.C. § 78j(b)] and Rule 10b-5 [17 C.F.R. § 240.10b-5] thereunder. The Commission seeks a permanent injunction, a permanent conduct-based injunction, disgorgement with prejudgment interest, and a civil money penalty.

## II. DEFENDANT AND RELEVANT ENTITY

7. **Moore**, age 59, is a resident of D'Iberville, Mississippi. Moore founded Mississippi Green in December 2020. During the Relevant Period, Moore was a member and general manager of Mississippi Green and controlled its business decisions and fundraising.

8. **Mississippi Green** is a Mississippi limited liability company formed by Moore in December 2020, with its principal place of business in Prentiss, Mississippi.

## III. JURISDICTION AND VENUE

9. This Court has jurisdiction over this action pursuant to Sections 20(b), 20(d), and 22(a) of the Securities Act [15 U.S.C. §§ 77t(b), 77t(d), and 77v(a)] and Sections 21(d), 21(e), and 27(a) of the Exchange Act [15 U.S.C. §§ 78u(d), 78u(e), and 78aa(a)].

10. This Court has personal jurisdiction over Defendant and venue is proper in this District pursuant to Section 22(a) of the Securities Act [15 U.S.C. § 77v(a)] and Section 27 of the Exchange Act [15 U.S.C. § 78aa]. First, a substantial part of the acts, communications, and transactions giving rise to the violations of the Securities Act and Exchange Act occurred within this District in its Southern Division. Defendant personally solicited investors in Biloxi, Mississippi. He resides in D'Iberville, Mississippi, and some

of the harmed investors reside in Biloxi, Mississippi. Further, Mississippi Green, which Defendant founded and used to perpetrate the instant antifraud securities violations, has its principal place of business, as well as its marijuana cultivation and production facilities, in Prentiss, Mississippi.

11. In connection with the conduct alleged in this Complaint, Defendant, directly and indirectly, singly or in concert with others, made use of the means or instrumentalities of interstate commerce, the means or instruments of transportation and communication in interstate commerce, and the mails.

## IV. FACTUAL BACKROUND

### A. Medical Marijuana in Mississippi

12. On November 3, 2020, Mississippi voters approved a constitutional amendment authorizing a state-regulated medical marijuana program. On May 14, 2021, the Mississippi Supreme Court invalidated the ballot measure, holding that it did not satisfy the State's constitutional requirements for citizen initiatives.

13. The State Legislature subsequently passed the Mississippi Medical Cannabis Act, which was signed into law on February 2, 2022, and legalized medical, but not recreational, cannabis.

### B. Defendant's Medical Marijuana Business and Securities Offering

14. In December 2020, Defendant founded Mississippi Green in Prentiss, Mississippi, to grow, cultivate, and sell medical marijuana plants to dispensaries in Mississippi and other states. In promotional materials given to some investors, Mississippi Green described itself as "A Medical Marijuana Cultivator, Processor & B2B Service

Provider."

15. To fund Mississippi Green's business operations, Defendant offered individual investors equity interests in the company with periodic profit distributions. During the Relevant Period, Defendant raised at least $4.94 million from approximately 20 retail investors nationwide. He often presented the investment opportunity as a select one, available only to certain individuals he knew or met personally at Mississippi Green's medical marijuana facility, as well as to his friends, family, and acquaintances.

16. Defendant communicated with investors and prospective investors informally—primarily in person or by telephone, and sometimes through email and text messages. He told investors he would use their money for legitimate business purposes, namely, to develop a medical marijuana growing and processing facility. To persuade some investors to invest, he disseminated slide decks that detailed Mississippi Green's business plan and contained financial information and projected revenues. One of the slide decks projected first-year revenue as high as approximately $64 million, while another one projected between approximately $40 and $60 million.

17. After an individual decided to invest, Defendant and the investor executed a "Letter of Agreement" in which the investor agreed to pay a certain sum in exchange for a percentage equity interest in Mississippi Green. Typically, an investor paid $300,000 for a 1% equity interest. The agreement provided additional information about the medical marijuana business, such as that Mississippi Green "is developing a Medical Marijuana Grow in a 15,000 square foot building that will be a processing company in Prentiss[,] Mississippi," and that the money provided by investors "will be used for an investment."

Defendant directed investors to deposit or wire money into one of several bank accounts that he exclusively controlled (the "Moore-controlled accounts").

18. In addition to selling equity interests in Mississippi Green through the Letters of Agreement, Defendant promised investors that they would receive quarterly profit distributions in amounts proportional to their percentage of equity ownership. Defendant's promises as to when investors could expect quarterly distributions varied. Additionally, Defendant said to some investors that such quarterly distributions would continue as long as Mississippi Green remained operational and profitable.

19. The Letters of Agreement and promises Defendant made regarding distributions constituted investment contracts and were thus securities under Section 2(a)(1) of the Securities Act [15 U.S.C. § 77b(a)(1)] and Section 3(a)(10) of the Exchange Act [15 U.S.C. § 78c(a)(10)]. In exchange for equity interests and a pro rata share in the company's profits commensurate with that equity ownership, investors made an investment of money and wired money into the Moore-controlled accounts based on Defendant's representations that it would be used for the medical marijuana business.

20. Defendant pooled and commingled investor money and exercised complete control in running the day-to-day affairs of Mississippi Green—from purportedly building a grow facility, to purchasing grow equipment, obtaining a medical marijuana license from the State of Mississippi, cultivating marijuana plants, and selling medical marijuana to dispensaries across Mississippi and other states. Investors had no role in managing Mississippi Green's operations. They expected to receive profits from Defendant's successful management of the company. In fact, Defendant gave some investors a slide

deck similarly stating that Mississippi Green "will take an active approach to establishing partnerships and programs . . . to integrate and expand operations" and "will execute on proposals and distribute high quality flower in sufficient quantities to fuel market growth, tax revenues[,] and profits."

## V. DEFENDANT'S VIOLATIONS OF THE ANTIFRAUD PROVISIONS OF THE FEDERAL SECURITIES LAWS

### A. Material Misstatements and Omissions

21. While soliciting investors and telling them that his company was positioned to generate substantial revenue—despite knowing full well that his company was experiencing setbacks—Defendant made material misrepresentations and omissions about the use of investor proceeds, promised returns, and the existence of related lawsuits. He did this through in-person conversations, phone calls, emails, and text messages.

#### 1. Use of Investor Proceeds

22. During the Relevant Period, Defendant told investors and prospective investors that their money would be used exclusively to develop Mississippi Green's medical marijuana business, including equipment purchases, building out the grow and production facility, and cultivating marijuana plants.

23. In May 2022, Defendant told one investor that his initial investment would be used to develop the production facility in Prentiss. He repeated the same story to many other investors, telling them that their money would be used as "seed capital" to kick start the business generally, build and improve the production facility, and purchase medical marijuana plants to grow. The Letters of Agreement that investors executed with Defendant

memorialized the purpose of their initial investments. They recognize that investor money "will be used for an investment," and noted that Mississippi Green "is developing a Medical Marijuana Grow in a 15,000 square foot building that will be a processing company in Prentiss[,] Mississippi."

24. Although Defendant used some of the investor money to pay for legitimate business expenses, he failed to tell investors the whole truth—that he was using a sizable portion of that money to pay for his personal expenses. Of the approximately $4.94 million of investor money he raised, he misappropriated approximately $1.94 million for his personal use—around 40% of investor proceeds. In fact, Defendant began misappropriating investor money right away in December 2021 and continued doing so until at least August 2024. Among other things, Defendant spent approximately $189,000 on travel and lodging, $180,000 in grocery and department store purchases, $145,000 on fast food and restaurants, $100,500 on clothing and jewelry, $20,500 in private school payments, $698,000 in cash withdrawals, and $180,000 in transfers to family members. Defendant failed to disclose his misappropriation of money to investors when he solicited them throughout the Relevant Period.

25. A reasonable investor would consider it important to know, before investing, that Defendant diverted investor money for personal use.

**2. Short-term Distributions**

26. Defendant told various investors and their relatives in text messages, over the phone, and in person, that they could expect a quarterly distribution by a certain date upon investing. Fueled by these material promises of short-term distributions, some

investors took out lines of credit on their homes to invest in Mississippi Green.

27. Defendant's representation that investors would receive distributions from business profits shortly after they invested—anywhere between thirty days and nine months from the date of investment—was false. Defendant did not pay distributions when they came due and gave investors excuses and empty promises of future payment. Defendant repeated these promises even when Mississippi Green did not generate profits and had no medical marijuana ready for release.

28. While soliciting two investors in late 2023, Defendant promised them that their $200,000 investment would be repaid by December 2023 and that quarterly distributions would begin then. After they wired Defendant their money, however, they never received payment at or near the promised date. Defendant made a similar promise to another investor, telling him that he would receive his $50,000 principal back by December 2023, along with his first distribution. Induced by this promise, the investor wired Defendant $50,000—only to never receive a payment afterwards.

29. Another investor, who had invested hundreds of thousands of dollars in March 2023 but had yet to receive a distribution as promised, texted Defendant on January 13, 2024, hoping to "understand what is going on." Defendant responded that same day assuring the investor, "we have everything paying quarterly starting first quarter march 31 June October December." But no payments ever came, prompting the same investor to text Defendant on March 22, 2024, "Why have u abandoned me[?]" Defendant's lies continued. Defendant reassured her that he would make a payment, replying, "do not use that word we are on schedule to pay you on payment day. . . . You will be fine." Five days later, he

repeated the same message, writing, “Payouts on our schedule and we will talk.” Defendant never paid this investor distributions.

30. Defendant knew at the time that he made these promises, and similar promises to other investors, that they were false. He knew he and Mississippi Green would not be able to honor them given the fact that he was misappropriating investor money and there were business delays. These included medical marijuana licensing delays throughout 2022 and 2023, as well as equipment, electricity, and cultivation problems in 2023 and 2024. Indeed, it was not until July 2022, that, on behalf of Mississippi Green, Defendant applied for a medical marijuana cultivation license with the Mississippi State Department of Health. The company would not receive its cultivation license from Mississippi until June 2023. Further, Mississippi Green did not actually begin to plant the marijuana plants until October 2023, which produced a substandard crop that was sold at a deep discount. Mississippi Green planted a second round of crops in February 2024.

31. Defendant’s promises about quarterly distributions by a certain date were material to investors, who invested with Defendant to make money..

32. Finally, in a letter to all investors dated April 8, 2024, Defendant informed investors of his company’s numerous delays, noting the slow rollout of Mississippi’s medical marijuana program and delay in obtaining the cultivation license from the State. Defendant also disclosed that the resulting product from Mississippi Green’s initial October 2023 crop “was not up to MGO standards.”

33. In the end, Defendant did not make any distributions to investors, whatsoever, during the Relevant Period or anytime thereafter.

**3. Investor Lawsuits**

34. Making these lies about quarterly distributions all the more misleading, Defendant failed to disclose to prospective and existing investors that some investors of Mississippi Green had filed lawsuits against him and Mississippi Green alleging, among other things, failure to pay distributions or return investment principal.

35. An investor filed the first lawsuit against Defendant in January 2023, after which Defendant induced at least twelve additional individuals to invest in Mississippi Green. *See Boihem v. Moore et al.*, No. 2:23-cv-326 (E.D. La. 2023). Two other investors filed a second lawsuit in May 2024, after which two new investors induced by Defendant invested in the company. *See Konits et al. v. Moore et al.*, No. 1:24-cv-2186 (N.D. Ga. 2024). Defendant did not disclose these suits to those subsequent investors. On June 2, 2024, when asked by an investor whether he had been served with a lawsuit, Defendant texted that he was "not served nothing."

36. An investor would consider it material to know that Defendant, while promising quarterly distributions, had been sued in the past for failing to make them.

**B. Scheme to Defraud**

37. Despite telling investors he would invest their money into Mississippi Green, Defendant engaged in a scheme to defraud by misappropriating investor money for personal use, often within days of receiving deposits into Moore-controlled accounts. He withdrew investor money at ATMs or used the debit card linked to the Moore-controlled accounts to fund his personal expenditures. For example, on May 6, 2022, after receiving $100,000 of investor money, Defendant spent over $21,000 within a week on restaurants,

hotels, a vacation package, and other entertainment.

38. Several times, investor deposits into one of the Moore-controlled accounts coincided with Defendant overdrawing or nearly overdrawing the same account, prompting him to raise more money from investors, which would then only jumpstart the next cycle of misappropriation. In June 2022, Defendant overdrew a bank account into which he had directed $1.2 million in investor deposits. Of that amount, he misappropriated approximately $438,000, which included, among other things, approximately $241,000 in cash withdrawals and over $38,000 in transfers to family members. Similarly, after raising $200,000 in March 2023, Defendant spent over $59,000 that same month on cash withdrawals, travel (hotel and airfare), jewelry, restaurants, florist purchases, and entertainment.

**C. Defendant's Scheme Unravels**

39. Over time, Defendant's scheme unraveled as weary investors complained and filed lawsuits over the lack of distributions that Defendant promised them. Word of the lawsuits eventually spread among investors, who reached out to Defendant on numerous occasions asking for the status of their returns, only for Defendant to continually lie to them or ignore them.

40. By October 2024, Defendant relinquished his majority interests in Mississippi Green and ceased to manage the company. One month after that, on November 21, 2024, another investor filed a third lawsuit against him and Mississippi Green over his failure to repay principal as promised. *See Burnley v. Moore et al.*, No. 3:24-cv-117 (M.D. Ga. 2024). A fourth lawsuit by two other investors soon followed on June 19, 2025, for the

same reason. *See Mavar et al. v. Moore et al.*, No. 1:25-cv-197 (S.D. Miss. 2025).

## VI. CLAIMS FOR RELIEF

### COUNT I
### Violations of Section 17(a)(1) of the Securities Act

41. The Commission repeats and realleges Paragraphs 1 through 40 of this Complaint.

42. By engaging in the conduct described herein, and as alleged in Paragraphs 37 through 40 above, during the Relevant Period, Defendant, in the offer or sale of securities by use of the means or instruments of transportation or communication in interstate commerce or by use of the mails, directly or indirectly, knowingly or recklessly employed devices, schemes or artifices to defraud.

43. By reason of the foregoing, Defendant, directly or indirectly, violated and unless enjoined, is reasonably likely to continue to violate, Section 17(a)(1) of the Securities Act [15 U.S.C. § 77q(a)(1)].

### COUNT II
### Violations of Section 17(a)(2) of the Securities Act

44. The Commission repeats and realleges Paragraphs 1 through 40 of this Complaint.

45. By engaging in the conduct described herein, and as alleged in Paragraphs 21 through 36 above, during the Relevant Period, Defendant, in the offer or sale of securities by use of the means or instruments of transportation or communication in interstate commerce or by use of the mails, directly or indirectly, negligently obtained money or property by means of untrue statements of material facts or omissions to state

material facts necessary to make the statements made, in light of the circumstances under which they were made, not misleading.

46. By reason of the foregoing, Defendant, directly or indirectly, violated and unless enjoined, is reasonably likely to continue to violate, Section 17(a)(2) of the Securities Act [15 U.S.C. § 77q(a)(2)].

**COUNT III**
**Violations of Section 17(a)(3) of the Securities Act**

47. The Commission repeats and realleges Paragraphs 1 through 40 of this Complaint.

48. By engaging in the conduct described herein, and as alleged in Paragraphs 37 through 40 above, during the Relevant Period, Defendant, in the offer or sale of securities by use of the means or instruments of transportation or communication in interstate commerce or by use of the mails, directly or indirectly, negligently engaged in transactions, practices, and courses of business which have operated as a fraud or deceit upon the purchasers.

49. By reason of the foregoing, Defendant, directly or indirectly, violated and unless enjoined, is reasonably likely to continue to violate, Section 17(a)(3) of the Securities Act [15 U.S.C. § 77q(a)(3)].

**COUNT IV**
**Violations of Section 10(b) of the Exchange Act and Rule 10b-5(a)**

50. The Commission repeats and realleges Paragraphs 1 through 40 of this Complaint.

51. By engaging in the conduct described herein, and as alleged in Paragraphs 37 through 40 above, during the Relevant Period, Defendant, directly or indirectly, by use of the means and instrumentalities of interstate commerce, or of the mails, knowingly or recklessly employed devices, schemes or artifices to defraud in connection with the purchase or sale of securities.

52. By reason of the foregoing, Defendant, directly or indirectly, violated and unless enjoined, is reasonably likely to continue to violate, Section 10(b) of the Exchange Act [15 U.S.C. § 78j(b)] and Rule 10b-5(a) [17 C.F.R. § 240.10b-5(a)] thereunder.

## COUNT V
## Violations of Section 10(b) of the Exchange Act and Rule 10b-5(b)

53. The Commission repeats and realleges Paragraphs 1 through 40 of this Complaint.

54. By engaging in the conduct described herein, and as alleged in Paragraphs 21 through 36 above, during the Relevant Period, Defendant, directly or indirectly, by use of the means and instrumentalities of interstate commerce, or of the mails, in connection with the purchase or sale of securities, knowingly or recklessly made untrue statements of material facts or omitted to state material facts necessary in order to make the statements made, in light of the circumstances under which they were made, not misleading.

55. By reason of the foregoing, Defendant, directly or indirectly, violated and unless enjoined, is reasonably likely to continue to violate, Section 10(b) of the Exchange Act [15 U.S.C. § 78j(b)] and Rule 10b-5(b) [17 C.F.R. § 240.10b-5(b)] thereunder.

**COUNT VI**
**Violations of Section 10(b) of the Exchange Act and Rule 10b-5(c)**

56. The Commission repeats and realleges Paragraphs 1 through 40 of this Complaint.

57. By engaging in the conduct described herein, and as alleged in Paragraphs 37 through 40 above, during the Relevant Period, Defendant, directly or indirectly, by use of the means and instrumentalities of interstate commerce, or of the mails, in connection with the purchase or sale of securities, knowingly or recklessly engaged in acts, practices, and courses of business which have operated as a fraud upon the purchasers of such securities.

58. By reason of the foregoing, Defendant, directly or indirectly, violated and, unless enjoined, is reasonably likely to continue to violate, Section 10(b) of the Exchange Act [15 U.S.C. § 78j(b)] and Rule 10b-5(c) [17 C.F.R. § 240.10b-5(c)] thereunder.

## VII. PRAYER FOR RELIEF

**WHEREFORE**, the Commission respectfully requests the Court find Defendant committed the violations alleged, and:

### A. Permanent Injunction

Issue a permanent injunction enjoining Defendant, his officers, agents, servants, employees, attorneys, and all persons in active concert or participation with him and each of them, from violating Section 17(a) of the Securities Act [15 U.S.C. § 77q(a)] and Section 10(b) of the Exchange Act [15 U.S.C. § 78j(b)], and Exchange Act Rule 10b-5 [17 C.F.R. § 240.10b-5] thereunder.

**B. Conduct-Based Injunction**

Issue a conduct-based injunction restraining and enjoining Defendant from directly or indirectly, including, but not limited to, through any entity owned or controlled by Defendant, participating in the issuance, purchase, offer, or sale of any security; provided, however, that such injunction shall not prevent Defendant from purchasing or selling securities for his own personal account, pursuant to Section 21(d)(5) of the Exchange Act [15 U.S.C. § 78u(d)(5)].

**C. Disgorgement and Prejudgment Interest**

Issue an order directing Defendant to disgorge all ill-gotten gains or proceeds obtained as a result of the violations alleged herein, plus prejudgment interest thereon, resulting from the acts and/or courses of conduct alleged in this Complaint, pursuant to Sections 21(d)(3), (5), and (7) of the Exchange Act [15 U.S.C. § 78u(d)(3), (5), and (7)].

**D. Civil Money Penalty**

Issue an order directing Defendant to pay a civil money penalty pursuant to Section 20(d) of the Securities Act [15 U.S.C. § 77t(d)] and Section 21(d) of the Exchange Act [15 U.S.C. § 78u(d)].

**E. Further Relief**

Grant such other and further relief as may be necessary and appropriate.

## VIII. DEMAND FOR JURY TRIAL

The Commission demands a trial by jury on all issues so triable.

Dated: September 30, 2026

Respectfully submitted:

By: */s/ Michael C. Mikulic*
Michael C. Mikulic
Trial Counsel
Fla. Bar No. 125073
Direct: (305) 982-6353
Facsimile: (703) 813-9372
Mikulicm@sec.gov
*Lead Counsel*

Attorney for Plaintiff
**SECURITIES AND EXCHANGE COMMISSION**
801 Brickell Avenue, Suite 1950
Miami, FL 33131
Telephone: (305) 982-6300

J.E. Baxter Kruger
United States Attorney for the
Southern District of Mississippi

*/s/ James R. Bush*
JAMES R. BUSH (MSB# 104653)
Assistant United States Attorney
United States Attorney's Office
Southern District of Mississippi
501 East Court Street, Suite 4.430
Jackson, Mississippi 39201
Telephone: (601) 973-2171
Facsimile: (601) 965-4032
james.bush@usdoj.gov